UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE 1,

                              Plaintiff,

                    -v.-

EAST SIDE CLUB, LLC., JOHN DOE 2,
and JOHN DOE 3,

                              Defendants.

18 Civ. 11324 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

In a prior Opinion and Order, this Court ordered the imposition of
sanctions — in the form of attorneys' fees and costs incurred by the defense —
against Plaintiff John Doe 1 and his former counsel, Johnmack Cohen and the
Derek Smith Law Group (with Cohen, "DSLG"), as a result of their
misrepresentations to the Court and to Defendants in this litigation.  *See Doe 1*
v. *E. Side Club, LLC.*, No. 18 Civ. 11324 (KPF), 2021 WL 2709346, at *30
(S.D.N.Y. July 1, 2021) (the "Sanctions Opinion" or "*East Side Club I*"),
*reconsideration denied sub nom. Doe 1* v. *E. Side Club, LLC*, No. 18 Civ. 11324
(KPF), 2021 WL 4711249 (S.D.N.Y. Oct. 8, 2021).  This Opinion resolves the
amount of attorneys' fees and costs imposed on each of Plaintiff and DSLG.
Specifically, and for the reasons set forth herein, the Court awards attorneys'
fees in the amount of $100,230.98 and costs in the amount of $18,623.55
against Plaintiff, and attorneys' fees in the amount of $81,439.34 and costs in
the amount of $1,123.00 against DSLG.

**BACKGROUND**[1]

The Court presumes familiarity with the factual and procedural histories detailed in the Sanctions Opinion, all of which are incorporated by reference herein.  In broad summary, the Court determined that sanctions were warranted after Plaintiff provided false and misleading information to the Court and to Defendants about a concurrent action in the New York State Supreme Court, Bronx County (the "Bronx Action"), that Plaintiff had brought against, among others, his former attorney, Fordham University, and several officials associated with Fordham University (collectively with Fordham University, "Fordham").  The adverse consequences for the instant litigation were manifold:

> Plaintiff simultaneously pursued two cases in which he sought to recover for the same purported emotional distress; however, there was, and there could be, no overlap between the two theories of recovery. Nevertheless, in this action Plaintiff: (i) never disclosed the nature or even the existence of the emotional distress claims advanced in the Bronx Action; (ii) continued to seek emotional distress damages without any offset for the emotional distress purportedly attributable solely to the Bronx Action defendants; (iii) testified under oath that there were no other factors that contributed to his emotional distress;

---

[1]     For ease of reference, the Court adopts the citing and abbreviation conventions set forth in the Sanctions Opinion.  *See generally Doe 1* v. *E. Side Club, LLC.*, No. 18 Civ. 11324 (KPF), 2021 WL 2709346, at *1 n.1 (S.D.N.Y. July 1, 2021), *reconsideration denied sub nom. Doe 1* v. *E. Side Club, LLC*, No. 18 Civ. 11324 (KPF), 2021 WL 4711249 (S.D.N.Y. Oct. 8, 2021).  In this Opinion, the Court refers to Defendants' memorandum of law in support of their motion for attorneys' fees and costs as "Def. Fee Br." (Dkt. #170); to the Declaration of Thomas D. Shanahan in support of that motion as "Shanahan Fee Decl." (Dkt. #167); to Plaintiff's memorandum of law in opposition to Defendants' motion as "Pl. Fee Opp." (Dkt. #183); to Plaintiff's declaration in opposition to Defendants' motion as "Pl. Fee Decl." (Dkt. #184); to DSLG's memorandum in opposition to Defendants' motion as "DSLG Fee Opp." (Dkt. #199); to Defendants' reply memorandum of law as "Def. Fee Reply" (Dkt. #200); to the Reply Declaration of Thomas D. Shanahan as "Shanahan Fee Reply Decl." (Dkt. #201); and to the Declaration of Thomas D. Shanahan concerning the authentication of certain documents as "Shanahan Fee Auth. Decl." (Dkt. #202).

> and (iv) testified that he did not suffer any emotional damage as a result of the conduct complained of in the Bronx Action.

*East Side Club I*, 2021 WL 2709346, at *21. And while Plaintiff's then-counsel at DSLG may not initially have been aware of Plaintiff's deception at the time they filed the instant action on his behalf, the firm "failed to conduct even basic due diligence in investigating the Bronx Action," *id.* at *22, and later made key misrepresentations to the Court and Defendants in order "to gain a strategic advantage at trial, with reckless disregard for the truth," *id.* at *23.

Once Plaintiff's lies and omissions were fully ventilated, he voluntarily withdrew the lawsuit.[2] What remained was Defendants' request for

---

[2]     DSLG now suggests that "Plaintiff mainly withdrew this case because of the Court's severe warnings regarding Plaintiff's pending law license, not because this information [about the Bronx Action] came to light." (DSLG Fee Opp. 11). While the Court is not privy to communications between DSLG and its client, it nonetheless believes counsel's assertion to reflect an unduly myopic view of the record. At the February 27, 2020 hearing, the Court made clear that its singular concern was that Plaintiff had lied under oath and would continue to do so at trial:

> Mr. Cohen, I appreciate what you are saying about confusing the jury and I will understand that but you cannot — you cannot at this stage in the game — say that it's too late for us to begin looking at these things because from where I am sitting these are things that you or your client hid from the defense and from the Court and I am very disturbed. You reminded me that the plaintiff hasn't yet been admitted into the State of New York and depending on how he is at this trial, I will refer the matter to the First Department. *If he is a liar, if it turns out that this is isn't just confusion, that this is actually false statements and a deliberate effect, I will make sure that those who need to know, know, that he perjured himself before me.* And I am sure he doesn't want that to happen.

(Feb. 27, 2020 Tr. 25 (emphasis added)). Thus, to the extent the Court's admonitions caused Plaintiff to withdraw his action, Plaintiff could only have had a cause for concern if his statements regarding the Bronx Action were knowingly false, and if he planned on repeating those falsehoods in his trial testimony. For this reason, the Court stands by its original finding that "[d]isclosure of the Bronx Action and the nature of the claims asserted therein would have dramatically altered the instant litigation. On this point, the Court does not even need to hypothesize, since disclosure of this information

"reasonable fees and costs and expenses." (Feb. 28, 2020 Tr. 8).  After extensive briefing from the parties — a process that was complicated by the Court's finding of a conflict of interest between Plaintiff and DSLG on the precise issues in play — the Court determined to award Defendants reasonable attorneys' fees and costs "to compensate Defendants … for the protraction and subversion of the litigation process in the runup to the trial." *East Side Club I*, 2021 WL 2709346, at *26 n.20.  In particular, the Court imposed costs and fees (i) on Plaintiff for the period from May 2, 2019, until the voluntary termination of the action on February 28, 2020, and from March 17, 2021, to the issuance of the Sanctions Opinion, and (ii) on DSLG for the period from January 13, 2020, through issuance of the Sanctions Opinion.  *Id.* at *25, 30-31; *see also id.* at *25 (noting that sanctions imposed on DSLG include "the costs associated with seeking leave to file and filing the instant motion for sanctions"), 30 (noting that sanctions imposed on Plaintiff "also include[ ] the cost of Defendants' response to Plaintiff's *pro se* opposition to the instant motion [for sanctions]").

The Sanctions Opinion included a briefing schedule for Defendants' fee petition. *East Side Club I*, 2021 WL 2709346, at *31.  Pursuant to that schedule, Defendants filed their memorandum of law and supporting documentation on July 16, 2021.  (Dkt. #167-170).  Five days later, on July 21, 2021, DSLG filed a notice of appeal with the United States Court of Appeals for

---

on the eve of trial ultimately precipitated Plaintiff's voluntary dismissal of this case." *East Side Club I*, 2021 WL 2709346, at *21.

the Second Circuit (Dkt. #172), and on July 29, 2021, it moved to stay further proceedings in this Court pending resolution of that appeal (Dkt. #175). For his part, Plaintiff filed a motion for reconsideration of the Court's Sanctions Opinion on July 28, 2021. (Dkt. #173-174; *see also* Dkt. #176). Ultimately, after hearing from the parties, the Court allowed Plaintiff's reconsideration motion to go forward, while granting DSLG's request for a stay of the determination of fees and costs pending resolution of its appeal. (Dkt. #170 (order scheduling briefing on motion for reconsideration); Dkt. #182 (stay order)).[3] The Court issued an Order denying Plaintiff's motion for reconsideration on October 8, 2021. (Dkt. #191).

On May 18, 2022, the Second Circuit dismissed DSLG's appeal, finding that no final order had been issued by this Court as contemplated by 28 U.S.C. § 1291. (Dkt. #193 (mandate)). On June 10, 2022, this Court lifted the stay and reset the briefing schedule on Defendants' fee petition. (Dkt. #195). DSLG filed its opposition memorandum on August 22, 2022. (Dkt. #199). Defendants then filed a reply memorandum and several supporting declarations on October 16, 2022. (Dkt. #200-202).

After noting a discrepancy in the billing records submitted by Defendants, this Court issued an order on June 5, 2023, requesting additional substantiation for certain attorneys' fees claimed by the defense. (Dkt. #210). On June 9, 2023, counsel for Defendants submitted a supplemental

---

[3]     Plaintiff filed his opposition to Defendants' fee petition on August 16, 2021. (Dkt. #183-184).

declaration explaining the inadvertent omission of certain billings from Defendants' prior submissions.  (Dkt. #211).  The Court understands that all of the legal fees for which defense counsel seeks submission were in fact billed to Defendants.

## DISCUSSION

### A.    Applicable Law

In the Sanctions Opinion, the Court found that sanctions were warranted against both DSLG and Plaintiff pursuant to the Court's inherent powers; against DSLG pursuant to 28 U.S.C. § 1927; and against Plaintiff pursuant to Rule 37 of the Federal Rules of Civil Procedure.  *See East Side Club I*, 2021 WL 2709346, at *19-20, 24-25, 27-31.  To review, a court has the "inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for bad-faith conduct."  *Sussman* v. *Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995); *accord Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). Separately, Section 1927 authorizes a court to require an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously ... to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927; *see also Craig* v. *UMG Recordings, Inc.*, No. 16 Civ. 5439 (JPO), 2019 WL 2992043, at *4-5 (S.D.N.Y. July 9, 2019).  Finally, Federal Rule of Civil Procedure 37 provides that when "a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders."  Fed. R. Civ. P. 37(b)(2)(A).  In such circumstances, Rule 37 requires the court to "order the

6

disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); *see generally Agiwal* v. *Mid Island Mortg. Corp.*, 555 F.3d 298, 302-03 (2d Cir. 2009).

"Attorneys' fees are typically awarded by determining the "'presumptively reasonable fee,'" often (if imprecisely) referred to as the "lodestar." *Millea* v. *Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)); *see also Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542, 552-53 (2010); *Rossbach* v. *Montefiore Med. Ctr.*, No. 19 Civ. 5758 (DLC), 2021 WL 4940306, at *1 (S.D.N.Y. Oct. 22, 2021) ("When a court imposes a monetary sanction against a party in the amount of its adversary's attorneys' fees, the familiar lodestar method is used to calculate the appropriate sum."). The lodestar is calculated by multiplying the "reasonable hourly rate and the reasonable number of hours required by the case." *Millea*, 658 F.3d at 166. Courts may, only after the initial calculation of the presumptively reasonable fee, adjust the total when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Lilly* v. *City of New York*, 934 F.3d 222, 230 (2d Cir. 2019) (quoting *Millea*, 658 F.3d at

167).[4]  A district court possesses considerable discretion in awarding attorneys'
fees.  *See Millea*, 658 F.3d at 166; *see also Arbor Hill*, 522 F.3d at 190.

   "To determine the reasonable hourly rate for each attorney, courts must
look to the market rates 'prevailing in the community for similar services by
lawyers of reasonably comparable skill, experience, and reputation.'" *Heng
Chan* v. *Sung Yue Tung Corp.*, No. 03 Civ. 6048 (GEL), 2007 WL 1373118, at *2
(S.D.N.Y. May 8, 2007) (quoting *Gierlinger* v. *Gleason*, 160 F.3d 858, 882 (2d
Cir. 1998)).  The Second Circuit's "forum rule" requires courts to "generally use
'the hourly rates employed in the district in which the reviewing court sits' in
calculating the presumptively reasonable fee."  *Simmons* v. *N.Y.C. Transit Auth.*,
575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill,* 493 F.3d at 119).

   "A district court has discretion to determine a reasonable hourly rate
based on considerations such as the complexity of the case, the prevailing
rates in similar cases in the district, and the quality of representation."  *Pasini*
v. *Godiva Chocolatier, Inc.*, 764 F. App'x 94, 95 (2d Cir. 2019) (summary order)

---

[4]     The Second Circuit confirmed in *Lilly* v. *City of New York*, 934 F.3d 222, 233 (2d Cir.
2019), that while this Circuit has adopted the lodestar approach for fee determinations,
the twelve factors set forth in *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714,
717-19 (5th Cir. 1974) — which articulated a competing method for fee
determinations — "remain important tools for helping district courts calculate the
lodestar and, in exceptional cases, determining whether an enhancement or cut to the
lodestar is warranted."  These twelve factors are: (i) the time and labor required; (ii) the
novelty and difficulty of the questions; (iii) the level of skill required to perform the legal
service properly; (iv) the preclusion of employment by the attorney due to acceptance of
the case; (v) the attorney's customary hourly rate; (vi) whether the fee is fixed or
contingent; (vii) the time limitations imposed by the client or the circumstances;
(viii) the amount involved in the case and results obtained; (ix) the experience,
reputation, and ability of the attorneys; (x) the "undesirability" of the case; (xi) the
nature and length of the professional relationship with the client; and (xii) awards in
similar cases.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cnty. of Albany*,
522 F.3d 182, 186 n.3 (2d Cir. 2008) (citing *Johnson*, 488 F.2d at 717-19, *abrogated on
other grounds by Blanchard* v. *Bergeron*, 489 U.S. 87 (1989)).

(citing *Townsend* v. *Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012));

*accord Lilly*, 934 F.3d at 231-32.  In this setting, "the district court does not

play the role of an uninformed arbiter but may look to its own familiarity with

the case and its experience generally as well as to the evidentiary submissions

and arguments of the parties." *Bliven* v. *Hunt*, 579 F.3d 204, 213 (2d Cir.

2009) (quoting *DiFilippo* v. *Morizio*, 759 F.2d 231, 236 (2d Cir. 1985)).

When determining the reasonable number of hours, a court must make

"a conscientious and detailed inquiry into the validity of the representations

that a certain number of hours were usefully and reasonably expended." *Haley*

v. *Pataki*, 106 F.3d 478, 484 (2d Cir. 1997) (internal quotation marks and

citation omitted).  In addition, a court should examine the hours expended by

counsel with a view to the value of the work product to the client's case.  *See*

*Lunday* v. *City of Albany*, 42 F.3d 131, 133-34 (2d Cir. 1994) (per curiam).  The

court is to exclude "excessive, redundant[,] or otherwise unnecessary hours, as

well as hours dedicated to severable unsuccessful claims." *Quaratino* v. *Tiffany*

*& Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

In determining whether hours are excessive, "the critical inquiry is

'whether, at the time the work was performed, a reasonable attorney would

have engaged in similar time expenditures.'" *Samms* v. *Abrams*, 198 F. Supp.

3d 311, 322 (S.D.N.Y. 2016) (quoting *Grant* v. *Martinez*, 973 F.2d 96, 99 (2d

Cir. 1992)).  And where "the billing records are voluminous, it is less important

that judges attain exactitude, than that they use their experience with the case,

as well as their experience with the practice of law, to assess the

9

reasonableness of the hours spent." *Yea Kim* v. *167 Nail Plaza, Inc.*, No. 05 Civ. 8560 (GBD) (GWG), 2009 WL 77876, at *4 (S.D.N.Y. Jan. 12, 2009) (internal quotation marks and citation omitted); *see also Fox* v. *Vice*, 563 U.S. 826, 838 (2011) (observing that the calculation of attorneys' fees "should not result in a second major litigation," because "[t]he essential goal in shifting fees ... is to do rough justice, not to achieve auditing perfection" (citation omitted)).  A court retains the discretion to make across-the-board percentage reductions to exclude unreasonable hours, colloquially referred to as "trimming the fat."  *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987); *accord McDonald ex rel. Prendergast* v. *Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006).

The burden is on the fee applicant — here, Defendants — to "document[ ] the appropriate hours expended and hourly rates." *Dancy* v. *McGinley*, 141 F. Supp. 3d 231, 235 (S.D.N.Y. 2015) (quoting *Hensley* v. *Eckerhart*, 461 U.S. 424, 437 (1983)).  Requested fees "must be supported with contemporaneous time records establishing for each attorney for whom fees are sought, the date on which work was performed, the hours expended, and the nature of the work done." *Abdell* v. *City of New York*, No. 05 Civ. 8453 (RJS), 2015 WL 898974, at *2 (S.D.N.Y. Mar. 2, 2015)).  "[C]ounsel ... [are] not required to record in great detail how each minute of [their] time was expended," but "counsel should identify the general subject matter of [their] time expenditures." *Hensley*, 461 U.S. at 437 n.12.

**B.    The Court Awards Reasonable Attorneys' Fees**

**1.    Overview**

Plaintiff and DSLG argue strenuously that Defendants should receive no attorneys' fees and costs or, at most, a fraction of what Defendants now seek. Several of these arguments are addressed *infra*, in the sections discussing reasonable hourly rates and reasonable hours billed.  However, several of these arguments can be addressed, and rejected, at the outset.  To begin, the Court rejects any efforts by Plaintiff and DSLG to re-argue the Court's Sanctions Opinion.  (*See, e.g.*, Pl. Fee Opp. 3; DSLG Fee Opp. 1, 3-6).  Plaintiff already filed an unsuccessful motion for reconsideration; DSLG elected not to, and instead took an appeal from the decision.

Relatedly, the Court rejects DSLG's efforts to understate its liability under the Sanctions Opinion.  In particular, DSLG argues that "[t]he Court solely sanctioned us regarding Plaintiff's Bronx Action, which impacted only emotional distress damages, not substantive liability."  (DSLG Fee Opp. 11). From this proposition, DSLG reasons that "at most the Court should only require us to reimburse Defendants for reasonable fees and costs incurred for events solely related to Plaintiff's Bronx Action."  (*Id.* at 11-12).  Not so, as the Court made clear in its Sanctions Opinion:

> In sum, DSLG's misrepresentations to the Court —
> starting with the tenth motion in limine, continuing
> with an affirmative misrepresentation to the Court on
> February 21, 2020, and concluding with repeated
> failures to correct or investigate the very
> misrepresentations the Court had already brought to
> DSLG's attention — demonstrates a complete disregard
> for the judicial process. *As a result of Plaintiff's*

11

> counsel's conduct, the Court and the parties expended
> significant resources preparing for trial, investigating
> Plaintiff's other litigation, preparing letters about and
> repeatedly conferring about this litigation, and
> separating DSLG's misrepresentations from the truth.
> Because Mr. Cohen and DSLG "acted in bad faith,
> vexatiously, wantonly, [and] for oppressive reasons," the
> Court finds that sanctions should be imposed in order
> "that those who create unnecessary costs also bear
> them[.]"

*East Side Club I*, 2021 WL 2709346, at \*24 (emphasis added) (internal citations omitted); *see also id.* at n.20 ("[T]he sanctions the Court imposes in this Opinion are designed to compensate Defendants, not for the various discovery disputes in the matter, but rather for the protraction and subversion of the litigation process in the runup to the trial.").

Finally, the Court rejects DSLG's efforts to shift blame to Defendants for not discovering DSLG's and Plaintiff's lies and misrepresentations earlier. (*See, e.g.*, DSLG Fee Opp. 16-18). Quite obviously, DSLG was in a better position than Defendants or their counsel to investigate Plaintiff's claims, and DSLG does not deny that it was aware of the fact (if not the full scope) of the Bronx Action at or shortly after the filing of the instant case. *See East Side Club I*, 2021 WL 2709346, at \*22 ("[B]y May 2019, Plaintiff had disclosed the existence of the action to DSLG, noted that he intended to pursue intentional infliction of emotional distress damages against Sewell, and given DSLG enough information to have discovered the true nature and scope of his claims in the Bronx Action."). Despite that access to information that could easily resolve the truth of Plaintiff's representations, by January 2020, DSLG was "proactively ma[king] material misrepresentations [in the tenth] motion *in*

12

*limine* to gain a strategic advantage, as [counsel] sought to keep evidence of the Bronx Action and Plaintiff's other litigation from the jury at trial." *Id.* at *23. These material misrepresentations were contained in filings submitted pursuant to Federal Rule of Civil Procedure 11, and were then repeated to the Court in response to direct questions in pretrial conferences. *Id.* With the record now complete, which record demonstrates the ease with which Plaintiff and his counsel responded to requests for information and clarification with lies and half-truths, this Court will not fault Defendants for not having filed a motion to compel earlier. (*See, e.g.*, DSLG Fee Opp. 16-17 ("Defendants would have greatly mitigated their losses had they utilized the Federal Rules of Civil Procedure and filed a motion to compel this information after Plaintiff submitted his May 2, 2019 objection.")). In short, the Court has no confidence that Plaintiff would have provided a truthful response had earlier requests been made. Finally, and perhaps most importantly, the Court stands by its prior statements to the parties about its own contemporaneous difficulties (and, at times, inability) to access court documents filed in the Bronx Action, a difficulty that was shared by defense counsel. (*Cf.* Def. Fee Opp. 5 n.6 (discussing accessibility of Bronx Action docket)). As it did in the Sanctions Opinion, the Court rejects DSLG's current attempts at victim-blaming.

### 2. Determining a Presumptive Reasonable Rate

In Defendants' opening fee memorandum, counsel for Defendants, Thomas D. Shanahan, outlined his education and his experience in the 26 years since his graduation from law school, as well as the hourly rates that he

13

charges and has been awarded by other judges in analogous cases. (*See* Def. Fee Br. 2-5).[5]  Mr. Shanahan advised that his customary hourly rate was $425 to $475, but that he had discounted that rate for Defendants because they were long-time clients, charging them $350 and, beginning in September 2021 (and reflected on invoices from October 2021 forward), $425 per hour.  (*Id.* at 5; Def. Fee Reply 7).  Mr. Shanahan requests that the Court impose an enhanced hourly rate of $475, reasoning that to award fees at the discounted rates would amount to Mr. Shanahan "subsidizing the bad behavior of Plaintiff" and DSLG.  (Def. Fee Br. 6; *see also id.* ("They [[Plaintiff and DSLG)] should absorb the full value of their sanctionable conduct which will serve to deter future similar behavior.")).

DSLG objects to Mr. Shanahan's request for an enhancement of his hourly rates (*see* DSLG Fee Opp. 7 n.9), but does not question the reasonableness of the rates themselves (*id.* at 9 ("Therefore, $350.00 should be the rate used in calculating the reimbursement.")).  Plaintiff also objects to the request for enhancement, and goes so far as to intimate that Mr. Shanahan engaged in unethical, if not criminal, conduct in the forms of (i) defrauding his clients by billing them for administrative tasks or (ii) keeping two sets of books, one of which was used to bill his clients and the other of which was used for the instant fee petition.  (Pl. Fee Opp. 4-12, 15-16).  The Court will address the

---

[5]  Though the Court would have preferred receiving this information in a sworn statement, it will accept the factual statements in Defendants' opening brief, many of which statements have been confirmed by the Court by referring to Mr. Shanahan's website and to the dockets and/or citations of the cases to which he cites.

specifics of Mr. Shanahan's billing entries in the next section of its Opinion, but notes at this juncture that it does not agree with Plaintiff's characterizations.

The Court has written and reviewed many fee petition decisions over the years, and it recognizes that there has not been perfect consistency in assessing the reasonableness of attorneys' rates. *See, e.g.*, *Tessemae's LLC* v. *Atlantis Capital LLC*, No. 18 Civ. 4902 (KHP), 2019 WL 2635956, at *4 (S.D.N.Y. June 27, 2019) ("Courts in this District have determined that hourly rates ranging from $250 to $1,260 per hour, for attorneys' work on a commercial litigation matter, were reasonable."). The discounted rates of $350 and $425 fall comfortably within the range of rates approved by sister courts in this District in employment discrimination and civil rights cases. *See, e.g.*, *Casmento* v. *Volmar Constr., Inc.*, No. 20 Civ. 944 (LJL), 2022 WL 17666390, at *4 (S.D.N.Y. Dec. 14, 2022) (awarding hourly rates in employment discrimination case of $500 and $300, respectively, to attorneys with 16 and 20 years' experience); *Olaechea* v. *City of New York*, No. 17 Civ. 4797 (RA), 2022 WL 3211424, at *13 (S.D.N.Y. Aug. 9, 2022) ("[C]ourts in this District have awarded experienced civil rights attorneys, including those practicing alone or in small firms, hourly rates ranging from $200 to $650 per hour." (collecting cases)).

The reasonableness of the $350 and $425 rates is further confirmed by the fact that those are the rates that were actually charged to and paid by Defendants. (*See* Def. Fee Br. 5-6 (discussing rates charged to Defendants);

Dkt. #169 ("From June 11, 2019, to July 1, 2021, East Side paid the amount of $135,332.15."); *see also, e.g.*, Shanahan Fee Auth. Decl., Ex. FF, HH (ledgers and cancelled checks reflecting payments by Defendants to Mr. Shanahan for fees incurred in this case)).  Courts in this District have recognized that an "attorney's customary billing rate for fee-paying clients is ordinarily the best evidence of" a reasonable hourly rate.  *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 962 (RCC), 2006 WL 3498590, at *9 (S.D.N.Y. Dec. 4, 2006); *see also Infinity Transportation MSN 6651, LLC* v. *Synergy Aerospace Corp.*, No. 19 Civ. 209 (RA) (SN), 2023 WL 2789516, at *8 (S.D.N.Y. Feb. 24, 2023) ("The fact that a sophisticated client has represented that it would and did pay these rates is strong evidence that they are reasonable." (citations omitted)), *report and recommendation adopted*, No. 19 Civ. 209 (RA), 2023 WL 2787994 (S.D.N.Y. Apr. 5, 2023).

The Court declines Mr. Shanahan's request, however, for an enhanced hourly rate.  It is true that "after this initial calculation of the presumptively reasonable fee is performed[,] a district court may, in extraordinary circumstances, adjust the presumptively reasonable fee when it 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'"  *Lilly*, 934 F.3d at 230 (quoting *Millea*, 658 F.3d at 167).  But the Court has considered Mr. Shanahan's rate in light of the facts of this case and the *Johnson* factors listed above, *see supra* at n.4, and does not believe this case to involve extraordinary circumstances warranting an enhanced hourly rate.  While the length and detail of the Court's Sanctions

16

Opinion was designed to make clear precisely what the Court found objectionable about the conduct of Plaintiff and of DLSG, in the hopes that such conduct would not be repeated, the Court intended the sanctions principally to make Defendants whole, such that reimbursement of the attorneys' fees actually paid by Defendants would suffice.  *See Agudath Israel of Am.* v. *Hochul*, No. 22-38, 2023 WL 2637344, at *3 (2d Cir. Mar. 27, 2023) (summary order) (upholding district court decision not to enhance fees based on the specifics of the case).  Accordingly, the Court finds that Mr. Shanahan's rates of $350 and $425 are reasonable.

### 3. Determining the Reasonable Number of Hours Expended

In their opening fee petition, Defendants sought $117,313.62 from DSLG (comprising $97,720.23 in legal fees and $19,593.39 in costs), and $119,690.08 from Plaintiff (comprising $102,374.27 in legal fees and $17,315.81 in costs).  (Def. Fee Br. 7-8).[6]  Defendants contend that, of these figures, Plaintiff and DSLG are jointly and severally liable for $40,404.33 (comprising $37,807.00 in legal fees and $2,597.33 in costs).  (*Id.* at 8).  In their reply submission, Defendants seek an additional $20,093.77 in legal fees, reflecting fees incurred after the submission of their initial fee petition.

---

[6]     The substantiation for the attorneys' fees and costs sought by Defendants is idiosyncratic, and at times inconsistent.  For example, certain of the summary billing and expense sheets submitted by Mr. Shanahan include an entry for a previous balance that is outside the scope of the Court's Sanctions Opinion.  (*See, e.g.*, Shanahan Fee Decl., Ex. D-F; Shanahan Fee Auth. Decl., Ex. FF).  In addition, Mr. Shanahan agrees with DSLG that certain time entries for May 11, 2020 (for 1.33 hours), May 12, 2020 (for 1.25 hours), and May 13, 2020 (for 1.75 hours) are incorrect and should be stricken.  (*See* DSLG Fee Opp. 22-23; Shanahan Fee Reply Decl. 7-8).  The Court has not considered these erroneous entries, and has done its best to isolate those entries that are within the scope of the Sanctions Opinion.

(Shanahan Fee Auth. Decl., Ex. FF).  In further support of Defendants'
position, Mr. Shanahan has explained that (i) because of the vexatiousness of
Plaintiff and DLSG, he was required to do all of the legal work on the case
himself, rather than referring tasks to a paralegal or associate; (ii) the invoices
he submitted in support of Defendants' fee petition already exclude time billed
by his paralegal, "discussions with colleagues relating to this case," and "other,
traditionally billable activity"; and (iii) he did not bill his client, and thus did
not seek reimbursement here, for approximately 24 hours spent redrafting the
fee petition that the Court struck from the docket for being oversize.  (Def. Fee
Br. 6-8; *see also* Def. Fee Reply 6 ("As I address in my answers to the specific
objections, none of the entries are ministerial.  Almost all were work relating to
discovery violations and motions filed with this Court or substantial pre-trial
preparation that took full days and 'blocks' of time."); *id.* ("I would not allow
anyone in my office to speak to either Plaintiff or Mr. Cohen given they both
have the propensity to make untrue statements and Plaintiff, the most serious
of accusations without any evidence whatsoever.")).

Unsurprisingly, Plaintiff and DSLG advance a host of challenges to the
hours billed by Mr. Shanahan.  As noted previously, Plaintiff suggests that Mr.
Shanahan has defrauded either his clients or the Court.  He contends that Mr.
Shanahan has billed (and, by extension, that Defendants seek improperly to
recover) for work that was performed (or should have been performed) by a
paralegal; that Mr. Shanahan's billing entries include "phantom" entries with a
"deviating hourly rate"; and that Mr. Shanahan's submitted invoices are

themselves suspect.  (Pl. Fee Opp. 4-11).  Indeed, Plaintiff has so little

confidence in Defendants' fee petition, or in Mr. Shanahan's substantiation

therefor, that he requests investigation of those bank accounts to which

Defendants transferred funds in payment of Mr. Shanahan's invoices.  (*Id.* at

11-12).  The Court finds that Plaintiff's suggestions of unethical or criminal

behavior on the part of defense counsel are not borne out by the record, and

thus rejects them without extensive discussion.  To the extent Plaintiff contests

the hours billed as excessive, the Court will address that claim *infra*.

DSLG contends that Mr. Shanahan's billing entries are "vague,

duplicative and unjustified."  (DSLG Fee Opp. 8; *see also id.* at 21-25).  As one

example, DSLG notes that Mr. Shanahan billed in excess of 62 hours for a fee

petition that was struck by this Court as oversize, and argues that he was in

fact ethically obligated to exclude those hours from his request.  (*Id.* at 8 (citing

*Hensley*, 461 U.S. at 434); *see also id.* at 20 n.23)).  DSLG also rebuffs

Defendants' suggestion that it should be made to pay for post-February 2020

submissions relating to Plaintiff's *pro se* status and submissions.  (*Id.* at 19-

20).  Finally, DSLG argues that it should not be made to pay for the entirety of

Defendants' sanctions motion because, it claims, "a large part of that motion

was unsuccessful regarding" DSLG.  (*Id.* at 20).

As with Plaintiff's analogous claims, the Court will address DSLG's

claims of excessive hours momentarily.  However, the Court rejects DSLG's

other challenges to the number of hours billed.  While some portion of the

litigation immediately following the Sanctions Opinion was focused on

Plaintiff's status and representation, the conflict of interest that the Court identified in DLSG's continued representation of Plaintiff ultimately finds its roots in the conduct of Plaintiff and DSLG in this litigation.  To put a finer point on it, as between them and Defendants, the Court believes that Plaintiff and DSLG should bear those costs.  Separately, the Court finds that DSLG both understates Defendants' lack of success in moving for sanctions and overstates the degree to which Defendants' motion "relitigated matters the Court previously denied sanctions for."  (DSLG Fee Opp. 20).  For this reason, the Court rejected an identical claim by DSLG in the Sanctions Opinion:

> As an initial matter, the Court rejects DSLG's argument that Defendants are improperly seeking reconsideration of the Court's prior denials of sanctions motions for Plaintiff's failures to produce various HIPAA releases, medical care providers, and his asylum application. The Court denied each of those motions based on the record before the Court at that time.  After reviewing the parties' submissions in connection with the instant motion, the Court understands Defendants to be aggregating Plaintiff's and DSLG's repeated failures to disclose relevant information and asking the Court to consider this misconduct in its totality.  The Court will do so; to do otherwise would only serve to incentivize accretive misconduct.

*East Side Club I*, 2021 WL 2709346, at *26 (internal citations omitted).

The fact remains that there is some merit to Plaintiff's and DSLG's claims of excessive hours.  To be clear, the Court appreciates that Mr. Shanahan took a crack at "trimming the fat" from his invoices, but based on what the Court observed while presiding over this litigation, the invoices still reflect an unreasonable amount of hours billed.  For starters, while the Court accepts that Mr. Shanahan excluded paralegal time from his invoices, the fact remains

that he billed — at his attorney rate — such administrative and clerical tasks
as Bates stamping, mailing, and uploading materials to a flash drive.  (*See,
e.g.*, June 1, 2019 Invoice; July 30, 2019 Invoice; November 2, 2019 Invoice).
Because of counsel's use of block-billing, the Court is unable to ascertain
precisely how much time was spent on what the Court considers to be
administrative tasks.  *See generally LV* v. *N.Y.C. Dep't of Educ.*, 700 F. Supp.
2d 510, 525 (S.D.N.Y. 2010) ("Block-billing, the practice of aggregating multiple
tasks into one billing entry, is not prohibited," but it "can make it exceedingly
difficult for courts to assess the reasonableness of the hours billed." (internal
quotation marks omitted)).

Further — and while acknowledging the additional work created for Mr.
Shanahan by Plaintiff's malfeasance and by DSLG's virtually non-existent
investigation of the *bona fides* of its client's claims — the Court finds that some
of that work should have been performed by a more junior attorney.[7]  Even if
Mr. Shanahan may have been justifiably concerned about the perils of others
in his office speaking with Plaintiff or Mr. Cohen, the Court nonetheless
believes that legal research and initial drafting of submissions could have been
done at a lower hourly rate.  (*See, e.g.*, April 1, 2020 invoice; May 6, 2020
invoice).  *See K.E.* v. *N.Y.C. Dep't of Educ.*, No. 21 Civ. 2815 (KPF), 2022 WL
4448655, at *14 (S.D.N.Y. Sept. 23, 2022) (reducing fees to account for top-

---

[7]     It is unclear whether Mr. Shanahan employed, or could have employed on a contract
        basis, a more junior attorney to perform tasks such as legal research and drafting of
        submissions.  However, while the Court will not penalize Mr. Shanahan for being a sole
        practitioner, neither will it let him charge his full partner rate for tasks that could have
        been performed at a lower cost by a more junior attorney.

heavy staffing).  The Court also agrees in part with DSLG's specific criticism of

the invoices for the stricken fee petition, and would have preferred that Mr.

Shanahan write off the initial fees and charge for the revisions, rather than the

inverse.  *See Murray* v. *UBS Sec., LLC*, No. 14 Civ. 927 (KPF), 2020 WL

7384722, at *26 (S.D.N.Y. Dec. 16, 2020) (discussing cases in which courts

have reduced attorneys' fees awards based on lack of success), *rev'd on other*

*grounds*, 43 F.4th 254 (2d Cir. 2022), *cert. granted*, No. 22-660, 2023 WL

3158354 (U.S. May 1, 2023).

All of that said, the Court continues to believe that it is unfair for

Defendants to bear the costs of Plaintiff's and DSLG's misconduct.  In that

regard, the Court finds guidance in the analysis of Judge Denise Cote, who

addressed similar arguments in a different employment discrimination case in

which a *different* attorney at DLSG facilitated his client's fabrication of evidence

and spoliation of other evidence.  *See Rossbach* v. *Montefiore Med. Ctr.*, No. 19

Civ. 5758 (DLC), 2021 WL 3421569 (S.D.N.Y. Aug. 5, 2021) (discussing

misconduct by client and counsel).[8]  In assessing sanctions, Judge Cote was

---

[8]     The conduct ascribed to the DSLG lawyer is also disturbingly similar:

> Even after he was made aware that his client had likely fabricated
> evidence, [the DSLG attorney] made no serious effort to investigate
> the allegations, and if necessary to withdraw from his
> representation of his client.  Instead, even after he should have
> realized that [the plaintiff's] complaint was based on her false
> allegations, he stood by the complaint.  He submitted to the Court
> his client's false [d]eclaration and a largely speculative expert
> declaration that did not address key evidence of fabrication
> identified by the defendants' expert.  He also submitted a frivolous
> motion for sanctions against the defendants which necessitated a
> response from the defendants.

*Rossbach* v. *Montefiore Med. Ctr.*, No. 19 Civ. 5758 (DLC), 2021 WL 3421569, at *9
(S.D.N.Y. Aug. 5, 2021).

presented with arguments similar to those raised by DLSG today — that the sanctions imposed should be narrowly circumscribed, and that the hours billed were simply too high.  She largely rejected those arguments, and this Court echoes her sentiments:

> In their remaining objection, [plaintiff] and her counsel assert that the defendants billed an excessive number of hours to this matter.  They contend that, with the elimination of excessive hours and certain categories of work, the overall sum of monetary sanctions should be reduced to $86,378.27.  *This argument has a fundamental flaw: it was largely the actions of [plaintiff] and [the DSLG attorney] that dictated the kinds of work and the amount of work undertaken by defense counsel.*  As the August 5 Opinion explains, [plaintiff] attempted to stymie the defendants in their efforts to uncover her fabrication through a lengthy campaign of perjury and spoliation.  Instead of acting in accordance with his professional obligations, [the DSLG attorney] facilitated that campaign.  And at every step of the way, [plaintiff] and [the DSLG attorney] opted to prolong this litigation — and, by extension, increase the defendants' legal bills — in an effort to evade accountability for their misdeeds.

*Id.* at *2 (emphasis added).

In assessing the reasonableness of hours billed in prior fee petitions, this Court has alternated between the use of an across-the-board percentage reduction and the disallowance of certain hours billed.  *Compare Gamero* v. *Koodo Sushi Corp.*, 328 F. Supp. 3d 165, 175 (S.D.N.Y. 2018) (disallowing certain time entries billed), *with Marzullo* v. *Karmic Release Ltd.*, No. 17 Civ. 7482 (KPF), 2018 WL 10741649, at *3 (S.D.N.Y. Apr. 24, 2018) (imposing across-the-board reduction of 15%).  Both are acceptable methods of arriving at a reasonable number of hours.  The Court has carefully reviewed

Defendants' substantiation for the attorneys' fees they request, which substantiation includes detailed invoices, records of payment, third-party invoices, and explanations of billing from Mr. Shanahan. (*See, e.g.*, Def. Fee Br.; Shanahan Fee Decl.; Shanahan Fee Reply Decl.; Shanahan Fee Auth. Decl.; Def. Fee Reply). Balancing Mr. Shanahan's preemptive reductions and the Court's concern for making Defendants whole with the block-billing and top-heavy staffing issues identified above, the Court will impose an across-the-board reduction of 18%.

Before calculating the relevant attorneys' fees, the Court pauses to address Mr. Shanahan's "billing and costs since the filing of our sanctions motion in July 2020 to the present excluding matters in the Second Circuit." (Shanahan Fee Auth. Decl. ¶ 18 & Ex. FF). After reviewing these billings, the Court will include them in its award of attorneys' fees after imposing an across-the-board reduction of 18%. Most of the billings in this section seek recovery for "fees on fees," or "the attorney's fees ... incurred in litigating the application for an award of attorney's fees." *Lilly*, 934 F.3d at 226-27. In the Sanctions Opinion, the Court authorized the reimbursement of fees incurred in making the motion for sanctions; here, the Court will permit recovery of the reasonable attorneys' fees incurred in preparing and submitting the instant fee petition. *See generally Weyant* v. *Okst*, 198 F.3d 311, 316 (2d Cir. 1999) ("[A] reasonable fee should be awarded for time reasonably spent in preparing and defending an application for ... fees[.]"); *Valley Disposal, Inc.* v. *Cent. Vermont Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1059-60 (2d Cir. 1995)

(finding that "unless there are reasons to the contrary, motion costs should be granted whenever underlying costs are allowed," but noting that Circuit precedent permits reductions for exorbitant claims). The remaining time entries concern the Defendants' review of and responses to Plaintiff's motion for reconsideration and DSLG's motion for a stay pending appeal. These entries are inextricably intertwined with the Court's sanctions award, and will similarly be assessed against Plaintiff and DSLG.[9]

For DSLG, the resulting attorneys' fees award is as follows:

| Time Period | Attorneys' Fees Sought | Percentage Reduction | Reasonable Fees Awarded |
|---|---|---|---|
| 1/13/2020-5/4/2021 | $79,222.50 | 18% | $64,962.45 |
| 7/22/2021-10/15/2022 | $20,093.77 | 18% | $16,476.89 |
| | | Total: | $81,439.34 |

For Plaintiff, the resulting attorneys' fees award is as follows:

| Time Period | Attorneys' Fees Sought | Percentage Reduction | Reasonable Fees Awarded |
|---|---|---|---|
| 5/2/2019-2/28/2020 & 3/17/2021-5/4/2021 | $102,139.14 | 18% | $83,754.09 |
| 7/22/2021-10/15/2022 | $20,093.77 | 18% | $16,476.89 |
| | | Total: | $100,230.98 |

Of these figures, Plaintiff and DSLG are jointly and severally liable for **$46,410.00**.

## C.    The Court Awards Reasonable Litigation Costs

"[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."

---

[9]      Mr. Shanahan clarifies that the time entries referencing DSLG's appeal "include[ ] matters before this Court but not the appeal presently pending in the Second Circuit." (Shanahan Fee Auth. Decl. ¶ 16).

*LeBlanc-Sternberg* v. *Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted); *see generally Chen* v. *E. Market Rest., Inc.*, No. 13 Civ 3902 (HBP), 2018 WL 3970894, at *4-5 (S.D.N.Y. Aug. 20, 2018) (discussing compensable costs).  In its Sanctions Opinion, the Court awarded reasonable litigation costs incurred by Defendants as a result of Plaintiff's and DSLG's misconduct.  *See East Side Club I*, 2021 WL 2709346, at *25, 30-31.  In response, Defendants request the reimbursement of $21,065.21 in costs.  (*See* Def. Fee Br. 9 ("Total expenses incurred during this litigation by Defendants are $21,065.21.  See Exhibit H.")).

Defendants' counsel has assembled a chart of expenses for which Defendants seek reimbursement, many of which expenses are substantiated by invoices from the respective service providers.  (Shanahan Fee Decl., Ex. H; *see also id.*, Ex. I-N).  Significantly, however, while the invoice attached as Exhibit H to Mr. Shanahan's declaration recites a total of $21,065.21 in costs, it begins with an opening balance of $2,441.66, for which there is neither explanation nor substantiation.  Because the Court cannot determine whether these expenses fall within the period specified in the Sanctions Opinion, it will deduct them from the costs sought, leaving a balance of **$18,623.55** in costs that are fairly traceable to Plaintiff's and DSLG's misconduct, and include messenger fees, process servers, transcript fees, and rebuttal expert witness expenses. Each of these expenses was incurred during the period of liability attributed to Plaintiff in the Sanctions Opinion; accordingly, the Court finds that Plaintiff is liable for this entire amount.  The Court limits the costs attributable to DSLG

26

to those costs incurred by Defendants between January 14, 2020, through February 28, 2020, the period of liability identified in the Sanctions Opinion, which amounts to **$1,123.00** in costs.

### D.    The Court Declines to Award Prejudgment Interest

For the first time in their reply submission, Defendants seek prejudgment interest as to each of the awards.  (Def. Fee Reply 7-8).  As an initial matter, it is unclear that the Court has the discretion to award interest on sanctions awards.  *See Remington Prods., Inc.* v. *N. Am. Philips, Corp.*, 763 F. Supp. 683, 685 (D. Conn. 1991) ("On its face, Rule 37(a) doe[s] not authorize recovery of prejudgment interest." (citation omitted)); *see also* 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally *the excess costs, expenses, and attorneys' fees* reasonably incurred because of such conduct." (emphasis added)).  However, to the extent that the Court has discretion with respect to the imposition of prejudgment interest, it declines to do so here.  The Court recognizes that Defendants are entitled to reimbursement of legal fees and expenses that were incurred as a consequence of Plaintiff's and DSLG's misconduct.  However, the fact remains that while the Court found sanctions to be warranted back in July 2021, it did not quantify those damages until this Opinion, which is being issued concurrently with the entry of judgment in this case.  In addition, to award prejudgment interest would, in the Court's estimation, penalize Plaintiff and DSLG for the Court's

27

own delays — many of which were attributable to the COVID-19 pandemic — in resolving both the sanctions motion and the fee petition. Thus, to the extent it has discretion, the Court exercises that discretion not to award prejudgment interest. In contrast, the Court will award post-judgment interest. *Tru-Art Sign Co.* v. *Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) ("Pursuant to 28 U.S.C. § 1961, '[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.'" (internal citation omitted)).

## CONCLUSION

For the reasons set forth above and in the Court's prior Sanctions Opinion, the Court awards attorneys' fees in the amount of $100,230.98 and costs in the amount of $18,623.55 against Plaintiff, and attorneys' fees in the amount of $81,439.34 and costs in the amount of $1,123.00 against DSLG.

Accordingly, for the reasons set forth in this Order, the Court ORDERS that judgment be entered against Plaintiff and DSLG in those amounts. The Court further directs the Clerk of Court to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:     June 23, 2023
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

28